The next case on the call of the docket this morning is Agenda No. 15, No. 125691, Russell Zander v. Roy Carlson, Mr. Thomas Hooch III. Good morning, Your Honors. I'm Tom Hooch. I'm here with my co-counsel, Sabina Walsh, who wrote the brief for plaintiff's account. Your Honors, this case brings to you the question, to what extent you're going to adopt the action, what's commonly referred to as the action rule in the State of Illinois, and to what people it's going to cover. Atkinson had nothing to do with attorneys. Mr. Zander's case has everything to do with attorneys. The real problem is, in the Ninth Circuit, the Peterson case extended Atkinson to include attorneys and made some fairly significant and somewhat amazing findings. Peterson will refer to a union being a primary client, but a lawyer might still owe some duties to the person he's representing. The only facts before you are the facts contained in the complaint, which sets forth a prima facie case for professional malpractice by Mr. Carlson. Zander, as you know, is a police officer who was fired by his chief and then began the process to seek redress before a fire and police commission. Mr. Carlson was appointed by the union to represent him, who, according to the allegations of the complaint, induced Mr. Zander to give up his rights to the fire and police commission and turn the matter into what they called, and I say they, the union, a grievance. We allege he should have remained at the fire and police commission where he would have had due process by fellow citizens of the village of Fox Lake and redressed to the circuit court pursuant to administrative review our declaratory action. Nevertheless, his rights became known as a grievance, and it became an argument that only fair representation was a duty owed by Mr. Carlson under Atkinson and Peterson.  Now, he wasn't required to, but he paid dues to be represented by an attorney if he got in trouble at the police department, and he was told that they would give him an attorney. What they didn't say to him was, gee, I'm your attorney, but I'm really not. I owe a duty to the union, not to you. So if I negligently represent you, that's okay. I mean, if they said any of those things, Mr. Zander, I can assure you, would have ran as fast as he could to a private law firm. Anybody would. And that's really the thrust of the problem in how you make findings and how you handle this case. And the theory being that under Peterson, there is no duty to the person you're actually representing. Now, when we took an oath and you granted us the privilege to practice law in this state, we agreed to represent clients zealously, and you can't have conflicting masters in the practice of law. I, of all people in a number of malpractice cases I've handled, have come to learn that, that when lawyers get involved in conflicts, they get into trouble. And that's exactly what's happening in this situation. And if you adopt it, as is presently being decided under Peterson in the Ninth Circuit, we're going to have some serious issues here. Because what they really say is what's more important is who paid the lawyer to what he's doing. And it surely can't be that way. My heavens, if we adopted that theory in this state, then every legal services organization would say, well, we're the ones who pay the lawyer. They owe us a duty, not the person that's paid us for free water to write a will or whatever. It can be extended to all sorts of situations. And we can't have that. I mean, if you don't have an attorney-client relationship, there is no confidentiality. There are no fiduciary duties. None of those things exist. When Mr. Carlson, who never should have been handling this type of a case with a year and a half of experience, undertakes to represent somebody, he has to owe that client a duty. So while you may have to adopt Atkinson as it pertains to unions, and under the fact set of the Atkinson case, you certainly don't have to include attorneys in that relationship. There has to be something more than just this is the guy that we're going to have handle your case, do whatever he says attitude. There absolutely has to be. If you don't find it's an attorney-client relationship, then you should find he's a direct beneficiary of that arrangement with the union and can assert an attorney-client privilege. You know, we raise the issue of insurance only to stress, well, if you won't allow just blanket standard of care, then to the extent he has insurance, it won't hurt the union at all. There's no reason for there to be a policy against bringing a suit against a union attorney by a member. And we cited both bankruptcy cases as an example, and we even cited tort immunity cases. Even though those people across the street took that away a number of years ago, it shows a clear intent of the state to allow that to go forward when the principal is not being injured, when there is commercial insurance available. But I don't, you know, I would like to see you just say we're not going to extend Atkinson or Thurwood-Peterson to attorneys if there is an attorney-client relationship. There has to be an attorney-client relationship. Counsel, would your third-party beneficiary argument swallow up Atkinson? I think it's a separate issue. I think Atkinson never involved attorneys. What I'm suggesting But it did involve union employees acting on behalf, theoretically, on behalf of the union member. Yes. Yes. I think it would the third-party beneficiary argument would have to carve an exception out of Atkinson. You couldn't have Atkinson blindly apply to attorneys and still have a third-party beneficiary to allow a suit because Atkinson says it's not the standard of care that we enforce then. It's the duty of fair representation, which require negligent or instructive, require deliberate acts, capriciousness, arbitrariness, discrimination, bad faith dealings. Those are all intentional things. Now, those can be a basis for legal malpractice. We've all seen cases where an attorney does something intentionally in a suit for malpractice. But you can't have you can't prove a breach of the duty of fair representation just because of a negligent act. I mean, I don't believe, and we didn't put anything in our complaint that would indicate that Mr. Carlson did anything intentionally. He just did them all negligently. He did it through a total lack of experience. We offered you the third-party beneficiary argument after the trial court ruled that Atkinson applied. We brought that up in a motion to reconsider. It wasn't part of our initial response because the issue wasn't there until the court ruled as it did. And incidentally, the court never ruled that we did not state a cause of action for malpractice under pleadings. That complaint states it sets forth a cause of action. The court ruled that we couldn't set forth a cause of action because of Atkinson, not because of the factual pleadings. We put the necessary facts in that case. I've done enough of those kind of cases to know that that was a good complaint. Does this suit arise out of the collective bargaining agreement? I'm sorry, ma'am? Does this suit arise out of the collective bargaining agreement? You know, that's another question that we raised. We don't believe that it did. We don't believe it has anything to do with what Atkinson defines as a collective bargaining process. That's the process of creating that contract. And bear in mind that these cases involve ‑‑ Atkinson involved suits against union officers by union agents or employees, members. It didn't employ something like this, which was not an arbitrationable thing. That's something Mr. Carlson talked Mr. Zander into doing. He had a remedy. He had to fire a police commission, but the union wanted it as a grievance in front of a sole arbitrator who, as we alleged, found, well, I'm not going to substitute my opinion for what the chief of police thinks. That was his finding. I mean, it's in the complaint. I mean, how could that be due process? And that's the problem when this sort of thing is allowed to happen. Is there something inappropriate about having a revision in the union contract that the union will provide a lawyer for their members? Ma'am, I don't know the answer to that. I haven't read that contract. It's not part of the record. I suspect there is, that by virtue of paying your dues, you're providing an attorney. Otherwise, they wouldn't provide one. But when they do provide one, he has to form an attorney-client relationship with that person. You can't have lawyers not owing the duty to people and representing them. I mean, as a matter of public policy, we enforce the rules of professional contract, professional conduct, excuse me. As a matter of public policy, we hold lawyers to a very high level. That's why we have malpractice cases. And when you say we're going to create a special class of lawyers who can do whatever they want and not suffer any risk of harm, we're in a terrible situation. We're then creating a separate group of attorneys who are held to a different standard of care. And we've refined the standard of care for years in this state as the one of reasonableness and having the skill, care, and knowledge of similar attorneys. And now we're going to say, well, no, all we have to do is not do anything intentionally bad and we're okay. We don't have to worry about the client because it's the union or a prepaid legal organization or any number of other organizations who's paying me. So I owe the individual I'm practicing on, not practicing for but practicing on, I don't owe him any duty. That can't be the law. And that's why to allow Atkinson or to adopt it in its present standards and to allow Peterson to become part of it would be such a calamity in this state. There are no cases yet in this state. This is going to be the first one. But you're not bound by the Ninth District, the Ninth Circuit, I'm rather. Opposing counsel has put in his brief numerous jurisdictions that have followed Peterson. Have you found one that was presented with this issue that has not followed Peterson? No. No. All I've found in federal cases is a California reported case in California that seems to indicate under some circumstances a lawyer can be sued, but they fall short of saying a union-employed lawyer can't be sued. But, you know, what everybody else does is interesting, and it certainly bears in how your thought process goes, but I come back to the duty you've always required of Illinois lawyers, and you can't require that duty by adopting Peterson. Are you making any argument about the other part of the appellate court opinion that said this was not properly in the state court that it should have been before the board? Well, the theory behind that is that it's not a breach of standard of care, it's a breach of fair representation, and that goes only to the labor board, depriving Mr. Zander of his constitutional right to a jury trial, by the way, and throwing out the standard of care that we hold Illinois lawyers to. And evidently that's what the appellate court thinks should happen. But I don't. And I hope this court doesn't either. Is your argument the same as it applies to the union as the argument you're making with regard to the attorney? No. Okay. No. I can understand the reason, the policy reasons behind Atkinson. What I'm saying is that it can't be extended to the attorneys. You may well adopt Atkinson, but not as to attorneys. I mean, you may, but I would hope you wouldn't. I think you should specifically find that we're bound by a whole different set of rules to supersede the nice circus ideas of how things should be done. And, again, Atkinson says nothing about attorneys. It's being extended by Peterson. And it's just saying, well, it's a blind, it applies to everyone, but they don't consider the duties that a lawyer owes his clients. So you're not saying that it's properly characterized as an unfair representation and, therefore, unfair labor practice? No. No, I think that Mr. Carson was negligent. I think he was grossly negligent in his representation, Mr. Zander. I don't think it comes anywhere close to a violation of fair representation, which requires really intentional acts. If there are no further questions, that's the sum of my arguments. Thank you. Thank you very much. Thank you, Mr. Gersh. Mr. Nelligan. Good morning, Your Honors. May it please the Court, counsel, Brendan Nelligan on behalf of Defendant Roy Carlson and the Illinois Fraternal Order of Police Labor Council. Your Honor, this Court should affirm the judgments of both the Circuit Court and the appellate courts and hold that the Supreme Court's Atkinson Rule fully applies in the public employee context under the Illinois Public Labor Relations Act. The Atkinson Rule is appropriate and sound for Illinois because, one, Illinois looks to federal law when interpreting the Illinois Public Labor Relations Act for guidance to the extent that the Illinois Public Labor Relations Act is guided by the same policy principles that the National Labor Relations Act is guided by. Number two, like federal law, the Illinois Public Labor Relations Act imposes a duty of fair representation on the unions for all of its members. Third, like federal law, Illinois has established a comprehensive statutory scheme that benefits from consistent and uniform representation — I'm sorry, interpretation. Justice Berk, to answer your question to Mr. Gooch, the exception to Atkinson under a third-party beneficiary theory would, in fact, swallow up the Atkinson Rule. And the problem is because any exception to the Atkinson Rule ultimately would yield in defeating the comprehensive statutory scheme that is envisioned after the recent deliberation of the legislature and set up by the Illinois Public Labor Relations Act. So Mr. Zander wasn't represented by a lawyer? I mean, it was just a union person. Well, he wasn't represented — Mr. Zander wasn't represented by a lawyer during the debate? No. Mr. Zander was represented by the union and an agent of the union who happened to be a lawyer. And that is commonplace in sort of the labor relations context. But he didn't need to have a lawyer there. That's absolutely correct, Your Honor. He did not need to be a lawyer. And that's, again, that's common under the statute. The sound policy reasons to apply the Atkinson Rule, as recognized by Peterson and its significant progeny, are the fact that it provides for a uniform standard of care for both the union and its agents in connection with activities related to the collective bargaining process. It also provides for a uniform statute of limitations, which will provide for prompt resolution of labor disputes. And finally, charting a different course than all the other jurisdictions that have really engaged on this issue would make it more difficult for Illinois public employee unions to obtain quality legal representation, which arguably would put them at a competitive disadvantage vis-à-vis public employers and other unions. Now, since we've asked you to — or since I'm asking you to apply the Atkinson Rule to the Illinois Public Labor Relations Act, I think it's germane to talk a little bit about Atkinson. I just have another question about the representation by the agent of the union. Yes. Did the agent, who is a lawyer, offer any legal advice to Mr. Zander? Well, Your Honor, it's not pled in the complaint, obviously. What the agent — what's alleged in the complaint is that Mr. Carlson was a union employee who was forced upon Mr. Zander by means of a cram-down, but that Mr. Carlson represented Mr. Zander throughout the grievance and arbitration process. And that's laid out throughout the complaint. Was it the intention of the union to have him give him legal advice? Well, it's — whether it entails legal advice or not, Your Honor, it's representation on behalf of the union. Mr. Carlson is representing Mr. Zander throughout the arbitration process on behalf of the union as allowed for by the collective bargaining agreement, which, to your question, Justice Garment, is in fact part of the record. It's at the record from pages C97 to 151. The entire collective bargaining agreement is contained within the record. And that collective bargaining agreement is, in fact, the mechanism which gets this case into the arbitration process. And the case is — I was just trying to find out what the — Mr. Zander thought was happening with him. Was he being represented by a lawyer, or did he know that this was an agent that really isn't really acting as a lawyer? Well, and, Your Honor, obviously, I can't speak as to what Mr. Zander thought or understood. What is alleged is that Mr. Carlson was the union employee to represent him throughout the grievance and arbitration process. That's what's alleged in pages C10 through 13 of the complaint. But what does represent mean in the union contract? Well, it's to represent the union member throughout this disciplinary grievance and arbitration process. That representation does not need to be performed by a lawyer, although it can be and, in fact, was in this case. So to that extent, represent is — and what the cases have held is that when there is an attorney involved in the grievance and collective bargaining process, the attorney is acting as an arm of the union. And so it is essentially, as an agent of the union, it is the union that is acting on its behalf and its member, in this case, Mr. Zander. Now, Atkinson reasoned that Section 301B of the Federal Labor Management Relations Act provided three things. It provided that unions could be sued, that unions were bound by the acts of their agents, and that agents and members were exempt from personal liability for judgments against the union. It further found that national labor policy intended that the union as an entity should be the sole source of recovery for any injuries inflicted by it. Now, from Atkinson, 20 years later in 1985, the Ninth Circuit considered the Peterson v. Kennedy case. And as counsel pointed out, Peterson is where the Ninth Circuit applied Atkinson in the context of a legal malpractice claim. That claim was brought by a union member against a union attorney, like we have here, for acts performed in connection with the collective bargaining process. In that instance, it was an NFL player suing an NFLPA attorney for malpractice related to the grievance. And what the Ninth Circuit held was that where an attorney performs a function in the collective bargaining process that would otherwise be assumed by the union's business agents or representatives, the Atkinson rule is squarely applicable. That's exactly what happened here. Now, Atkinson and Peterson both dealt with the National Labor Relations Act and the Labor Management Relations Act. Those dealt with private employers and relations between private employers and private unions. In Montplaisir v. Layton, which is the First Circuit's consideration of this matter, that applied Atkinson. In fact, it ruled that Atkinson has been applied or followed with monotonous regularity, but it applied it for the first time in the public employee context. There, the First Circuit considered a lawsuit by members of the Air Traffic Controllers Union against the union's attorneys for legal advice regarding an ill-fated strike in the early 1980s. The First Circuit, in considering that matter, that legal malpractice matter, rejected the notion that Atkinson was somehow distinguishable because the claim before it dealt with a public labor union. There, it was dealt the controlling act was the Civil Service Reform Act as opposed to the Labor Management Relation Act. And what the First Circuit held was that this legal malpractice claim, however you dress it up, is in fact a claim relating to the duty of fair representation. And it found that Atkinson therefore applied with even more force because the duty of fair representation was, in fact, created by the Civil Service Reform Act and could only be brought before the Federal Labor Relations Authority, the administrative agency designed to consider these labor disputes. And what the First Circuit held was that if the union itself could not be sued in the district courts for a duty of fair representation violation, it would defy logic to allow disgruntled members of that union to accomplish the same act by the result of circumnavigation or by indirectly suing the union's agents, their attorneys, in the district court. And what the court held was that Atkinson must fully apply in the public sector. Now, as in Montplaisir, the Illinois Public Labor Relations Act imposes a duty of fair representation upon public employee unions and makes any violation of that duty an unfair labor practice. And that's set forth in Section 6d and Section 10b-1 of the Illinois Public Labor Relations Act. That's recognized by or was recognized by the First District Appellate Court in Foley v. American Federation of State, County, and Municipal Employees back in 1990. And those claims also fall within the exclusive jurisdiction of the Illinois Labor Relations Board, again, Section 5 of the Public Labor Relations Act, and also recognized by the Foley Court. Now, as aptly noted by the appellate court in this case, and this is from paragraphs 13 through 22 of the appellate court's decision, other States' courts have similarly followed Atkinson and Peterson, notwithstanding the specific language that exists in the Labor Management Relation Act that undergirded Atkinson, that the Atkinson and Peterson rule arise from the duty of fair representation imposed upon public employee unions as a matter of State law. Two cases that the appellate court relied upon or cited were one from Maine, the Supreme Court of Maine, in Brown v. Maine State Employees Association, and from the Supreme Court of Nevada in Weiner v. Beatty. Now, I think it's key, or what I should say is the duty of fair representation is really the key interpretive principle that explains the Atkinson rule and why it applies in toto in this instance. So the duty of fair representation, as I mentioned, created by the Act, Section 6d. Also, a breach of it is an unfair labor practice by definition under Section 10b-1, but only if the union engages in intentional misconduct. In addition, all unfair labor practices, including those relating to the duty of fair representation, are subject to the exclusive jurisdiction of the Illinois Labor Relations Board, Section 5 of the Act. So if the Atkinson rule doesn't apply in toto, then this comprehensive statutory scheme is frustrated to the point of ultimate defeat, because a disgruntled litigant could evade the exclusive jurisdiction requirement by seeking to file an action in the circuit courts, which happened here. In addition, a frustrated or disgruntled member could evade the intentional misconduct requirement set forth in Section 10b-1, could evade that standard, again, by pursuing an action in the district court, now under a legal malpractice theory where we're going to assert a negligence standard. Third, a disgruntled union member could evade the statutory scheme by seeking to evade the 6-month statute of limitations, which is required for all unfair labor practices. Here, to the extent that the plaintiff wants to proceed under a legal malpractice theory, that statute of limitations is 2 years. Again, these attempts to truncate or evade the comprehensive statutory regime set up by the Public Labor Relations Act are what the appellate court recognized as the reason why Atkinson, as extended by Peterson and Montplaisir, and really every court, as Your Honor noted, that's really engaged on this issue, that's why those rules and that immunity has applied in tota. Again, as I mentioned, every court that's engaged on this issue with the extent of legal malpractice, so the extent we're talking about a special category of that attorneys are somehow held to a different standard. Well, the Montplaisir, in the Montplaisir decision, the First Circuit disregarded that argument, said, you know, the fact that you're going to articulate it as a legal malpractice claim, it doesn't change the fact that this is, at its fundamental level, these claims are encompassed with respect to the duty of fair representation. What is Mr. Zander alleging but for the fact that the union fell below some standard of representation when it represented him throughout this grievance and arbitration process, again, related to the collective bargaining agreement. And again, what the courts have held, and really every court that's looked at this in the legal malpractice context has uniformly held, that Atkinson, modified by Peterson, Montplaisir, and their progeny, that that legal malpractice claim is really encompassed or subsumed within the duty of fair representation. And that duty of fair representation is an integral part of the Public Labor Relations Act, such that any attempt to carve out an exception really does swallow up the rule such that a clever attorney or, you know, inventive pleading could easily articulate a claim against the union's agents in violation of Atkinson, and then by way of responding at Superior to go against the union itself. So for these reasons, and the reasons laid out by the appellate court in its decision, this Court should take an opportunity, take this opportunity to join all the other jurisdictions that have considered this issue and affirm that, yes, consistent with Federal labor law, given the aligned policy interests, and consistent with the idea of a uniform body of labor law, we are going to apply the Atkinson rule in total, irrespective of whether the union agent may be an attorney or not. In the final analysis, it is a union agent, and therefore Atkinson applies. If there are no further questions from the Court, I'll thank you and await your decision. Thank you, Your Honor. Bye, Bob. Oh, this is going to get old. It's not adopting what all the other jurisdictions have said. Hardly all of them have said anything. And, you know, I'm not going to stand here and read the allegations as a complaint to you. They're in the Appendix 35 to 46. And no case has the grievous actions of Mr. Carlson. Nothing is as bad as what he did. Bear in mind, most of these other cases, when they're giving immunity to a lawyer, they've all been connected with some type of union activity. This fellow was involved in a Fire and Police Commission hearing. That's where he was going to get due process. And along comes the union and Mr. Carlson, or Mr. Carlson because that's the way the union wants it, and convinces him to do a grievance in front of a single arbitrator. Well, why would he do that? Because the union can't practice law. And if they tried to represent him at the Fire and Police Commission, there would have been a real problem. So they had to get him away from there. There's a big difference. And that's one of the things that you'll have to do. I keep saying you'll have to. You should define to what extent and when is there no immunity for them to take the position that this rule of fair representation takes care of all the problems and then suggests a clever lawyer. I'm too old to be clever. I mean, can flesh out a negligence complaint. All you have to do is look at the things that Mr. Carlson is accused of doing. It wasn't at all hard to set forth a negligence complaint. The fellow didn't know what he was doing. He practiced law for a year and a half. And they put a man's career in his hands, particularly in a place like Fox Lake, which you can take judicial notice of, has had major police department problems. As I said, I can see how Atkinson could become the law of the state, but it certainly will frustrate the existing law of the state if it's applied to attorneys the way Peterson applied it. And we have a lengthy body of the standard of law, of the standards of care that lawyers are held to. And what we're going to do, if the appellee has their wish, what we're going to do is carve out a rule that says there's a standard of care for most attorneys and what they do, except when they're involved in something that could be construed to be a grievance, and then they can be as negligent as they want to, just as long as they don't violate the rule of fair representation. And certainly that can't be the law of the land in this state. I certainly hope not. Thank you very much. Thank you. Thank you, Mr. Gooch. Case number 125691, Russell Zander v. Roy Carlson, will be taken under advisement as agenda number 15. Thank you, Mr. Gooch and Mr. Nelligan, for your arguments.